UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

MARGARET YARBROUGH,       )
                          )
        Plaintiff,        )
                          )
vs.                       )       CIVIL ACTION No. CV-95-8-3173-NE
                          )
FLAGSTAR ENTERPRISES, INC.,   )
                          )
        Defendant.        )

**ENTERED**

MAR 3 1 1997.

## MEMORANDUM OPINION

This action is before the court on defendant's motion for summary judgment. Plaintiff alleges she was subjected to sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e et seq. Plaintiff also states pendent state law claims for outrageous conduct and intentional infliction of emotional distress. Defendant asserts summary judgment is appropriate on plaintiff's Title VII claims, because she has failed to establish that: the alleged conduct was based on plaintiff's gender; the conduct created a hostile work environment that had the effect of unreasonably interfering with plaintiff's work performance; defendant was not responsive to her complaints; and, the conduct was so pervasive that plaintiff was constructively discharged. Upon consideration of the motion, pleadings, briefs, and evidentiary submissions, this court concludes that defendant's motion is due to be granted.[1]

---

[1]The court has considered the following briefs: (1) "Brief in Support of Defendant's Motion for Summary Judgment"; (2) "Defendant's Reply Brief in Support of Motion for Summary Judgment"; and (3) "Nonmovant's Responsive Submission in Opposition to Defendant's Motion for Summary Judgment." The court also considered the following evidentiary submissions: (1) Deposition of Margaret

## I. FACTS

On June 3, 1994, plaintiff, Margaret Yarbrough, was hired as a cashier for the "Hardee's" restaurant located in Cullman, Alabama. Defendant, Flagstar Enterprises, Inc., owns that franchise operation. (Yarbrough Deposition at 14.) The general manager during plaintiff's three month period of employment was Sue Mangum. Yarbrough enjoyed what she described as a "fairly close" relationship with Mangum. Yarbrough said she "spoke with [Mangum] quite a bit about my personal problems," and Mangum would "console me and try to lead me in what I should do." (Id., 13.) Yarbrough's "personal problems" included: a recent divorce; child custody conflicts; counseling for herself and her nine year old son; and, a pregnancy that miscarried.[2] Mangum testified that, despite her personal problems, Yarbrough was a good employee. (Mangum Declaration, ¶ 3.) Mangum accordingly adjusted Yarbrough's work schedule, to allow her time to cope with such difficulties while continuing to work.[3]

The first incident leading to this action occurred in early July 1994. Co-employee Laura Harris used obscene language while

---

Yarbrough; and (2) October 31, 1996 Declaration of Sue Mangum.

Plaintiff's counsel attempted to supplement plaintiff's evidentiary submissions with an affidavit of Margaret Yarbrough. However, that represents the second consecutive attempt by the same attorney to untimely file an evidentiary submission in this court. Therefore, plaintiff's request will be denied by the order entered contemporaneously herewith.

[2]Yarbrough was absent from work for three weeks following her miscarriage. (Declaration of Sue Mangum, ¶ 6.)

[3]For example, Mangum allowed Yarbrough time to take her son to counseling appointments and, on another occasion, moved Yarbrough from day-shift to night-shift so she could spend more time with her son.

working in the public dining area. Yarbrough, who alleges she was training for a supervisory position, reprimanded Harris. Harris responded she did not care what Yarbrough thought about her language, and if Yarbrough did not like it, then she could "just suck her dick." (Yarbrough Deposition, at 28-29.) Yarbrough reported the incident to general manager Sue Mangum and breakfast manager Cindy Turner. Yarbrough later recounted having said:

> I cannot believe what Laura was saying out in the lobby. And I told her that it bothered me that she would be talking like that in front of the customers, and I didn't appreciate her talking like that in front of me.

(*Id.*, 29-30.) Mangum admonished Yarbrough to be more understanding, saying Harris also had a lot of problems in her own life.

The second incident occurred two months later, during the morning of September 3, 1994. While walking to the back of the restaurant to "clock-in" for the breakfast shift, Yarbrough witnessed Laura Harris and another female employee "standing with their arms around each other." Their hands were on one another's buttocks. While the two were thus embraced, Harris allegedly said to the other employee: "you're not going to eat my pussy today because you've ate it all night and like I've already told you, I'm not giving you any today." (*Id.*, 40.) Later that day, when Laura Harris made a similar statement to the same co-employee, Yarbrough rebuked both of them, saying: "look, you two are not going to talk like this on the front line. I said, I am running this front line, and you're not going to act like this on my shift." (*Id.*, 41). Laura Harris responded, "oh, you're just jealous because you want

3

to eat my pussy yourself." (*Id.*)  Taunting ensued throughout the remainder of that day.  On one occasion, Harris attempted to trip Yarbrough.    Tanya Ballard, a co-employee allegedly allied with Harris, poked Yarbrough in the back with her elbow as she and Yarbrough were passing.

The final incident also occurred that same day.  Cashiers working the drive-through window were talking loudly over the intercom,[4] bickering, and yelling at cooks for delays in the preparation of food orders.  Yarbrough again intervened, saying "[g]irls, you've got to stop hollering back and forth on the front line and stuff.  We can't do that because they're doing the best they can back there."    (*Id.*, 82.)    This time, Harris told Yarbrough: "if you don't leave me alone I'm going to beat your ass." (*Id.*, 83.)

Yarbrough complained to Mangum that she was being "picked on." Mangum acknowledged she had noticed what was going on, but said that was why she had moved Yarbrough from the drive-through window to register one.  Mangum also told Yarbrough the restaurant was understaffed, and instructed her to return to her register.  When Yarbrough refused, Mangum told her to "go home."  Although Yarbrough interpreted Mangum's direction as meaning she was fired, her name was not removed from the restaurant's work schedule or payroll. Mangum later testified she did not intend to terminate Yarbrough's

---

[4]Mangum received a complaint from a customer that afternoon concerning a drive-through employee using the phrase "eat my pussy."  Harris and Ballard were disciplined and told that any further use of such language would result in the termination of their employment.

4

employment when directing her to "go home";[5] instead, she just could not afford to send two cashiers (Harris and Ballard) home and keep only one (Yarbrough) on duty. (Mangum Declaration, ¶ 12.)

Defendant's employee handbook establishes its policy regarding sexual harassment, and instructs employees on the procedures to follow if subjected to sexual harassment. Yarbrough admits she read and understood the policy, which requires an employee to first complain to her general manager. If the complaint was not resolved at that level, the employee was instructed to proceed to her district leader. Yarbrough complied with that policy by calling her district leader, Wayne Barnett, after leaving work on the afternoon of September 3, 1994. Barnett and Mangum scheduled a meeting with Yarbrough to address her reasons for leaving work and to discuss her return to work. Yarbrough canceled the meeting, however, saying:

A.   I told Ms. Mangum that I just didn't want to come in and sit in on that meeting. I did not want to talk about it with Laura [Harris] that day. I didn't want to talk about it any further with them. I felt I had been done wrong, and I did not want to discuss it any longer.

Q.   Well, what all did Ms. Mangum say that day?

A.   She told me that she wanted me to come to this meeting so we could get this straightened out with Laura and maybe I could return back to work there and me and Laura could be friends and this would no longer be an issue.

---

[5]Mangum testified this was not the first time Yarbrough had come to her office upset and allowed to go home for the day, to settle her nerves. (Mangum Declaration, ¶¶ 9, 10.)

5

(Yarbrough Deposition at 20.)  Yarbrough nevertheless persisted in her refusal to attend the meeting.

One week later, Yarbrough called Mangum and, although Yarbrough had never been told she was "fired" or "terminated," asked why she had been fired.  Mangum responded by assuring Yarbrough that she had not been fired, that she was welcome to come back to work, and they would meet with the others and "get this thing straightened out." (*Id.*, 63.)  Yarbrough again refused to do so.[6]

On September 13, 1995, after Yarbrough failed to report for two consecutive weeks and twice had refused to meet with management, her name was removed from the payroll.  This action followed.

## II. STANDARDS FOR SUMMARY JUDGMENT

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment not only is proper, but "shall be rendered forthwith  if  the  pleadings,  depositions,  answers  to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ..."  (Emphasis supplied.)  The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  The moving

---

[6]Mangum did meet with Laura Harris, however.  Harris denied making the comments attributed to her.  (Mangum Declaration, ¶ 14.)

6

party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995)(*per curiam*).  Rule 56 permits the movant to discharge this burden <u>with</u> or <u>without</u> supporting affidavits.  *Celotex*, 477 U.S. at 325.  When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial.  *Jeffery*, 64 F.3d at 593.

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor.  *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).  Inferences in favor of the non-movant are not unqualified, however.  "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment."  *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted).  Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence <u>could</u> draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment.  *Augusta Iron & Steel*

7

*Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### III. HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT

Title VII "prohibits employment discrimination on the basis of gender, and seeks to remove arbitrary barriers to sexual equality at the workplace with respect to 'compensation, terms, conditions, or privileges of employment.'" *Henson v. City of Dundee*, 682 F.2d 897, 901 (11th Cir. 1981)(citations omitted). Courts recognize two forms of sexual harassment: *quid pro quo* sexual harassment; and, hostile work environment sexual harassment. *Quid pro quo* sexual harassment occurs when an employer alters an employee's job conditions as a result of the employee's refusal to submit to sexual demands. *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1315 (11th Cir. 1989). Hostile work environment sexual harassment occurs when an employer's conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment." *Steele*, 867 F.2d at 1315.

> Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when ... such conduct has the purpose or effect of unreasonably interfering with an

8

individual's work performance or creating an intimidating, hostile, or offensive working environment.

29 C.F.R. § 1604.11(a)(3)(1981).[7]  Yarbrough alleges a claim for hostile work environment sexual harassment only.

## A.    Elements of Prima Facie Case

In order to prevail on a Title VII hostile work environment sexual harassment claim, a plaintiff must establish five elements: (1) she belongs to a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based upon plaintiff's sex; (4) the harassment complained of affected a "term, condition, or privilege" of employment, in that it was "sufficiently severe or pervasive to alter the condition of [the victim's] employment and create an abusive working environment"; and (5) the employer knew, or should have known of the harassment, but failed to take prompt remedial action and, therefore, is liable under principles of *respondeat superior*.[8] *Henson*, 682 F.2d at 903-905; *Martin v. Norfolk Southern Railway Company*, 926 F. Supp. 1044, 1050 (N.D. Ala. 1996).  Yarbrough ultimately must establish that she was sexually harassed because of

---

[7]In General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401 (1976), the Supreme Court suggested the degree to which courts should defer to the E.E.O.C.'s interpretation of Title VII: "[w]e consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance...." (Citations omitted.)

[8]Unlike *quid pro quo* harassment, satisfying the first four elements of the *prima facie* case does not establish strict liability.  In hostile environment cases, liability attaches, if it attaches at all, through the doctrine of *respondeat superior*. *See* Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1316 (11th Cir. 1989).

9

her gender. *Meritor Savings Bank, FSB, v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986).

## B. The Actionability of Same-Gender Sexual Harassment

At first blush, Margaret Yarbrough's complaint appeared to raise the interesting question of whether same-gender sexual harassment in the workplace is actionable under Title VII. Neither the Supreme Court nor the Eleventh Circuit has directly addressed the issue. Consequently, this court assigned one of its law clerks the task of cataloguing all reported decisions discussing the problem, in hopes of discerning a trend of authority. The fruits of his labors are appended to this opinion. The harvest is not of consistent quality, however. The opinions reveal differing views of the purpose, intent, and scope of Title VII, although the tendency appears to be towards the recognition of same-gender sexual harassment claims.

Ultimately, this court concludes that it is not necessary to the resolution of this case to decide whether a claim of same-gender, hostile work environment sexual harassment is cognizable under Title VII. In either event, Yarbrough's claim fails. Clearly, if Title VII does not proscribe such harassment, Yarbrough's claim fails. On the other hand, even if an action for such conduct does lie under Title VII, Yarbrough's claim still fails, because — as discussed below — Margaret Yarbrough has not met her burden of demonstrating that the alleged harassment was based on her gender, or was sufficiently severe or pervasive to

10

create an objectively hostile work environment. *See Henson*, 682
F.2d at 903-04.

## C.   The Deficiencies of Yarbrough's Prima Facie Case

Defendant does not dispute that the conduct and comments to
which Yarbrough was subjected were unwelcome, undesirable, and
offensive. *See Henson*, 682 F.2d at 903 (conduct must be unwelcome
in the sense that the employee did not solicit or incite it, and in
the sense that the employee regarded the conduct as undesirable or
offensive). Accordingly, this court's analysis turns to whether
the harassment was based upon Yarbrough's sex or gender,[9] or was
sufficiently severe or pervasive to create an abusive working
environment.

### 1.   Conduct based on sex

The essence of a Title VII disparate treatment claim is that
an employee is intentionally singled out for discriminatory
treatment on the basis of a prohibited criterion (*e.g.*, gender).
*Henson*, 682 F.2d at 903. Therefore, in proving a claim of hostile
work environment sexual harassment, plaintiff must show that, "but
for the fact of her sex, she would not have been the object of
harassment." *Henson*, 682 F.2d at 903. Yarbrough has offered no
evidence suggesting that the harassment to which she was subjected
was inflicted upon her because of her gender.

---

[9]Courts have recognized that the word "sex" as used in Title VII means, in
effect, "gender." Hopkins v. Baltimore Gas & Electric Company 871 F. Supp. 822,
n.17 (D. Md. 1994)(citations omitted).

11

### a.   Solicitation for sex

Initially, Yarbrough argues that harassment resulted from her rejection of Laura Harris' "solicitation to perform oral sex." (Yarbrough Deposition, at 30, 74, 125.)   The incident to which Yarbrough refers is the first, in which Harris — in response to Yarbrough's criticism of her vulgar language — said: "if I didn't like it then I could just suck her dick." (*Id.*, 28-29.)   No reasonable jury could conclude that such a comeback was a solicitation for oral sex. The suggestion not only is a physical impossibility between two females, it is nothing more than a sharp retort by a vulgar co-worker. The mere fact that Harris' statement contained a sexual component does not make it a sexual solicitation.

Even if Harris' statement could rationally be construed as a "solicitation to perform oral sex," the subsequent harassment did not flow from the fact that Yarbrough was of the same sex: rather, it flowed from the fact that Yarbrough did not share the same apparent sexual orientation or preference as Harris. The term "sex" as used in Title VII is not synonymous with "sexual [orientation or] preference." *Fredette v. BVP Management Associates*, 905 F. Supp. 1034 (M.D. Fla. 1995)(citing *Ulane v. Eastern Airlines, Inc.*, 742 F.2d 1081, 1082 (7th Cir. 1984), *cert. denied*, 471 U.S. 1017, 105 S.Ct 2023 (1985); *Sommers v. Budget Mktg., Inc.*, 667 F.2d 748, 750 (8th Cir. 1982)(per curiam); *DeSantis v. Pacific Tel. & Tel. Co.*, 608 F.2d 327, 329-30 (9th Cir. 1979)); *see, e.g., Hopkins v. Baltimore Gas and Electric Company*, 77 F.3d 745, 751-52 (4th Cir.

12

1996)(Title VII does not prohibit conduct based on an employee's
sexual orientation, whether homosexual, bisexual, or heterosexual);
*Sexual Harassment in Employment Law*, B. Lindemann and D. Kadue 189
(1995)("both the EEOC and courts have uniformly held that Title
VII's ban on sex discrimination does not prohibit employment
discrimination of an individual's sexual orientation")(citations
omitted).

In *Fredette v. BVP Management Associates,* 905 F. Supp. 1034
(M.D. Fla. 1995), a male manager was sexually attracted to
Fredette, a male employee. Fredette complained of his manager's
discriminatory actions, and harassing threats arose only after
Fredette refused the manager's sexual advances and innuendo. The
court concluded:

> [I]f Fredette suffered the claimed harassment or
> discrimination at the hands of the restaurant manager, it
> stemmed not from the fact that Fredette was a man, <u>but
> rather from the fact that Fredette refused the manager's
> propositions and did not share the same sexual
> orientation or preferences as the manager.</u> Title VII
> does not provide a cause of action for discrimination or
> harassment levied because of one's sexual orientation or
> preference.

*Fredette,* 905 F. Supp. at 1037-38 (emphasis added).

### b.    Statements motivated by personal animosity

Yarbrough alleges that three harassing comments were directed
at her by Harris: (1) "suck my dick"; (2) "you're just jealous
because you want to eat my pussy yourself"; and (3) "if you don't
leave me alone I'm going to beat your ass." Such statements are
not demonstrative of harassment based on Yarbrough's sex. Rather,
each was made in response to officious attempts by Yarbrough to

13

correct the speech/behavior of Harris, and each simply verbalizes Harris' personal dislike of Yarbrough's unwanted advice.

Although the comments were sexually explicit and offensive, Title VII does not expect employers to purify the language in the workplace, or to remove all vulgarity or coarse comments. *See Baskerville v. Culligan International Co.*, 50 F.3d 428 (7th Cir. 1995). Moreover, serious personality clashes do not create liability under Title VII.

> Serious personality clashes may be an unwelcome reality of the workplace, and may lead, as in this case, to unfortunate consequences for employees.... Nevertheless, such clashes do not, without more, form the basis for relief under Title VII....

*Walker v. Nationsbank of Florida N.A.*, 53 F.3d 1548, 1558 (11th Cir. 1995).

An instructive case is *Johnson v. Hondo, Inc.*, 940 F. Supp. 1403 (E.D. Wis. 1996), where the same-gender sexual harassment consisted of epithets, with sexual overtones, uttered in the workplace. In *Johnson*, the plaintiff was subjected to what the court described as the "vulgar comments and gestures of a boorish co-worker, whose command of the English language was limited, singularly focused and clearly unrefined." *Johnson*, 940 F. Supp. at 1410. Despite the offensive nature of comments such as, "I'm going to make you suck my dick", the court concluded that the "fatal[] flaw[] in Johnson's allegation of sexual harassment" was that he failed to show how the harassment was the result of his gender. *Johnson*, 940 F. Supp. at 1411.

> Johnson's sole evidence of sexual harassment consists of inappropriate comments, such as, "suck my dick," which

14

certainly insulted Johnson, but not Johnson's gender. Although Hicks' comments and gestures directed at Johnson used sexually explicit language and sexual innuendo, <u>the comments were directed at Johnson because of a personal animosity between the two men -- not because of Johnson's gender.</u> Johnson worked in an exclusively male work environment and never contends that his work environment was "anti-male." The facts presented support the contention that the Hick's [sic] harassment of Johnson was motivated by mutual dislike rather than Johnson's gender. The record reflects no evidence that Hicks directed the remarks at Johnson because Johnson is a man. . . .

*Johnson*, 940 F. Supp. at 1411 (emphasis added).

Similarly, in *Vandeventer v. Wabash National Corp.*, 887 F. Supp. 1178 (N.D. Ind. 1995), a co-worker called plaintiff (among other things) a "dick sucker." The court wrote:

While the epithet used and the taunting had a "sexual" component, as do most expletives, <u>the crucial point is that the "harasser" was not aiming expletives at the victim because of the victim's maleness. He was taunting the victim because he did not like him.</u> [The plaintiff's] gender was irrelevant. There was no evidence that the abuse was based on the "harasser's" disdain for the victim's gender.

*Vandeventer*, 887 F. Supp. at 1181 n.2 (emphasis added).

In like manner, Harris' sexually explicit and vulgar comments were not directed at Yarbrough because of her gender. Instead, they were made in response to Yarbrough's unwelcome attempts to control the speech of front line employees. Harris taunted Yarbrough because she did not like Yarbrough's rebukes. The poking, tripping, and most notably, Harris' "I'm going to beat your ass" statement, leave no doubt that personal animus was the motivating factor — <u>not</u> Yarbrough's sex. *See McWilliams v. Fairfax County Board of Supervisors*, 72 F.3d 1191, 1196 (4th Cir. 1996)(vulgar conduct because of victim's particular susceptibility

15

to sexually-focused speech or conduct or because of the perpetrators' own sexual perversion, obsession, insecurity, insensitivity, or meanness of spirit is not sufficient to show that the harassment occurred "because of the victim's sex"). Therefore, they are beyond the penumbra of protection afforded by Title VII.

### 2. Sufficiently severe or pervasive conduct

Even assuming Harris' conduct was based on Yarbrough's gender, Yarbrough also must demonstrate that the conduct complained of was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *Meritor Savings Bank v. Vinson,* 477 U.S. at 67, 106 S.Ct. at 2405 (1986)(quoting *Henson v. City of Dundee,* 682 F.2d 897, 903-04 (11th Cir. 1982)). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *Harris,* 510 U.S. at 21, 114 S.Ct. at 370.

In evaluating whether harassment is sufficiently severe or pervasive to bring it within Title VII's purview, the court must examine the totality of circumstances, including: "[t]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23, 114 S.Ct. at 371. After careful consideration of the entire record, this court concludes that the conduct of which Yarbrough complains is neither

16

sufficiently severe nor pervasive to create an environment that a reasonable person would find hostile or abusive.

Yarbrough does not allege she was touched in a sexual manner; therefore, this court's analysis focuses solely on the comments. Yarbrough can point to only two specific dates on which she allegedly was subjected to verbal harassment.[10]  The first incident occurred in early July, 1996, and the second group of incidents all occurred on the same day: September 3, 1996.  Foremost, those dates are separated by a period of two months.  That alone suggests the absence of a condition sufficiently pervasive to establish Title VII liability.  *See Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1189 (2d Cir. 1987)(to be deemed pervasive, the conduct must be more than episodic; it must be sufficiently continuous and concerted); *Katz v. Dole,* 709 F.2d 251, 256 (4th Cir. 1983)(isolated incidents generally will not be sufficient to create a hostile working environment); *Baskerville v. Culligan International Co.,* 50 F.3d 428, 430 (7th Cir. 1995)("[a] handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage"); *Weiss v. Coca-Cola Bottling Co. of Chicago,* 990 F.2d 333, 337 (7th Cir. 1993)(relatively isolated incidences of non-severe conduct do not a hostile environment make).

In addition, the vulgarity of Harris' comments should not be confused with "severity" as the term is used in Title VII.  *See*

---

[10]While Yarbrough does allude to other incidents of vulgar or offensive conduct on the part of Harris, such claims are merely conclusory allegations unsupported by dates or any specific facts describing the alleged incidents.

17

*e.g., Bradshaw v. Golden Road Motor Inn,* 885 F. Supp. 1370, 1381 (D. Nev 1995)("personal hostility is not the same thing as hostility within the meaning of Title VII"). The "mere utterance of an ... epithet which engenders offensive feelings in an employee, does not sufficiently affect the conditions of employment to implicate Title VII." *Edwards v. Wallace Community College,* 49 F.3d 1517, 1521 (11th Cir. 1995). While Harris' conduct was tasteless and crude, this court cannot conclude it was of the type that would interfere with a reasonable person's work performance to the extent required by Title VII.[11]

In summary, the facts disclose no more egregious circumstance than those for which relief has been denied in the past. *Hopkins v. Baltimore Gas and Electric Company,* 77 F.3d 745 (4th Cir. 1996)(defendant's conduct consisted of bumping into plaintiff, positioning a magnifying glass over his genitals, staring at him in the bathroom, and kissing him at plaintiff's wedding reception); *Johnson v. Hondo, Inc.,* 940 F. Supp. 1403, 1410-11 (E.D. Wis. 1996)(summary judgment entered for defendant where co-worker of the same sex grabbed and manipulated his crotch, and repeatedly said that he wanted plaintiff to suck his dick); *Morgan v. Massachusetts General Hospital,* 901 F.2d 186, 192 (1st Cir. 1990)(conduct was not sufficiently sever or pervasive to create a hostile work

---

[11]To the extent that Yarbrough may have felt disrupted at work, the disruptions derived not solely from Harris' offensive conduct, but were influenced by Yarbrough's personal problems. Sue Mangum testified that Yarbrough's work performance was disrupted by her personal problems, which were wholly independent from the harassment alleged herein. (Mangum Declaration ¶¶ 3-4.)

18

environment where co-worker of the same sex stood so as to bump into plaintiff, looked at plaintiff's "privates" in the restroom, and asked plaintiff to dance); *Rabidue v. Osceola Ref. Co.*, 584 F. Supp. 419 (E.D. Mich. 1984)(no violation even though the plaintiff had to work with an extremely vulgar and crude individual who made obscene remarks about women and plaintiff in particular), *aff'd*, 805 F.2d 611 (6th Cir. 1986), *cert. denied*, 481 U.S. 1041 (1987).

Accordingly, the conduct of which Yarbrough complains, occurring on two days only, each separated by two months, does not create a sufficiently severe or pervasive environment upon which to base a Title VII claim.

## IV. CONSTRUCTIVE DISCHARGE

Absent proof of underlying sexual harassment, there can be no constructive discharge predicated on the harassing conduct. *Barrett v. Omaha National Bank*, 726 F.2d 424, 428 (8th Cir. 1984)("[h]aving failed to prove her claims of sexual harassment ... Barrett has not established the underlying illegality necessary to support a constructive discharge claim"); *Vermett v. Hough*, 627 F. Supp. 587, 607-08, (W.D. Mich. 1986)(claim of constructive discharge "must of necessity fail" if there is no finding of sexual harassment); B. Lindemann and D. Kaude, *Sexual Harassment in Employment Law*, 255 n.11 (1995)(if the plaintiff fails to prove the underlying sexual harassment, there can be no claim of constructive discharge predicated on the harassing conduct). Accordingly, Yarbrough's claim of constructive discharge fails.

19

## V. STATE LAW CLAIMS

Yarbrough also alleges state law claims of outrageous conduct and intentional infliction of emotional distress. Federal jurisdiction over pendent state law claims is governed by 28 U.S.C. § 1367(a), which provides:

in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Even so, the district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if "the district court has dismissed all claims over which it has original jurisdiction...." 28 U.S.C. § 1367(c)(3).

## VI. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is due to be granted. Additionally, this court declines to exercise supplemental jurisdiction over plaintiff's state law claims, pursuant to 28 U.S.C. § 1367(c)(3). An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this 31st day of March, 1997.

United States District Judge

20

## APPENDIX

**TO:**     Judge Smith

**FROM:**   Matt Minner

**Re:**     *Yarbrough v. Flagstar Enterprises*, CV-95-S-3173-NE

### SURVEY OF TITLE VII CASES DISCUSSING SAME-GENDER SEXUAL HARASSMENT IN THE WORKPLACE

Courts have conflicting views over the protection that Title VII offers individuals alleging sexual harassment by an employer or co-worker of the same gender. The Eleventh Circuit has yet to rule on the matter. Same-gender sexual harassment has been alleged in several forms: (1) heterosexual harassing heterosexual; (2) heterosexual harassing homosexual; (3) homosexual harassing heterosexual; and (4) homosexual harassing homosexual. A survey of the cases addressing same-gender sexual harassment in the foregoing categories illuminates the divergent results reached by the various courts and explains the rational used to attain those results.

### A.    Same-Sex Sexual Harassment is Never Actionable

One line of cases holds that same-gender sexual harassment is never actionable, regardless of the sexual orientation of the harasser. In *Garcia v. Elf Atochem North America*, 28 F.3d 446 (5th Cir. 1994), a male plaintiff alleged that his male supervisor sexually harassed him by approaching him from behind and "reach[ing] around and grab[bing plaintiff's] crotch area and ma[king] sexual motions from behind." *Garcia*, 28 F.3d at 448. The

Fifth Circuit referred to its decision in *Giddens v. Shell Oil Co.*, No. 92-8533 (5th Cir. Dec. 6, 1993)(unpublished), in holding that "harassment by a male supervisor against a male subordinate does not state a claim under Title VII even though the harassment has sexual overtones.    Title VII addresses gender discrimination." *Garcia*, 28 F.3d at 451-52 (citing *Goluszek v. Smith,* 697 F. Supp. 1452, 1456 (N.D. Ill. 1988)); *see also Hopkins v. Baltimore Gas & Electric Co.*, 871 F. Supp. 822 (D. Md 1994), *aff'd,* 77 F.3d 745 (4th Cir.), *cert. denied,* __ U.S. __, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996)(Title VII does not provide a cause of action for an employee who claims to have been the victim of sexual harassment by a supervisor or co-worker of the same gender); *Myers v. City of El Paso*, 874 F. Supp. 1546 (W.D. Tex. 1995)(same); *Benekritis v. Johnson*, 882 F. Supp. 521 (D.S.C. 1995)(same); *Ashworth v. Roundup Co.*, 897 F. Supp 489 (W.D. Wash. 1995)(same); *Schoiber v. Emro Marketing,* 941 F. Supp. 730 (N.D. Ill. 1996)(same).

In *Garcia,* the Fifth Circuit relied primarily on the case of *Goluszek v. Smith*, 697 F. Supp. 1452 (N.D. Ill. 1988), where the plaintiff, who was by his own admission "abnormally sensitive to comments pertaining to sex," filed a sexual harassment claim under Title VII alleging that his co-workers harassed him by commenting on his lack of sexual experience, accusing him of being gay or bisexual, poking him in the buttocks with a stick, and making other sex-related comments.    *Goluszek,* 697 F. Supp. at 1454.    The court

Appendix Page 2

concluded that "defendant's conduct was not the type of conduct Congress intended to sanction when it enacted Title VII." *Goluszek,* 697 F. Supp. at 1456.

> The discrimination Congress was concerned about when it enacted Title VII is one stemming from an imbalance by the powerful which results in discrimination against a discrete and vulnerable group. ... Title VII does not make all forms of harassment actionable, nor does it even make all forms of verbal harassment with sexual overtones actionable. The "sexual harassment" that is actionable under Title VII "is the exploitation of a powerful position to impose sexual demands or pressures on an unwilling but less powerful person." ... In effect, the offender is saying by words or actions that the victim is inferior because of the victim's sex.

*Id.* (citations omitted to Note, *Sexual Harassment Claims of Abusive Work Environment Under Title VII,* 97 Har. L. Rev. 1449 (1984)). Judge Ann Williams noted that the sexual harassment victim must be treated as inferior because of his or her gender and that the harassment must create an anti-male or anti-female work environment. *Goluszek,* 697 F. Supp. at 1456; *see also Fleenor v. Hewitt Soap Company,* 1995 WL 386793 (S.D. Ohio Dec. 21, 1994) (claim of male against male hostile environment sexual harassment is not actionable under Title VII, in the absence of an allegation that an anti-male environment was created thereby).

More recently, in *Oncale v. Sundowner Offshore Services, Inc.,* 83 F.3d 118 (5th Cir. 1996), a male plaintiff alleged that his male supervisor and male co-workers sexually harassed him on several occasions. The alleged harassment included: one perpetrator holding plaintiff while the other placed his penis on plaintiff's

neck and arm; threats of homosexual rape by co-workers; and, the use of force by the supervisor to push a bar of soap into the plaintiff's anus while co-employees restrained him.  Despite such egregious conduct, the Fifth Circuit followed its decision in *Garcia*, and held that same-sex harassment claims are not viable under Title VII.  *Oncale*, 83 F.3d at 120.

## B.   Heterosexual Harassing Heterosexual

The Fourth Circuit, as well as several district courts (including the Northern District of Alabama), have held that Title VII does not allow relief for same-sex heterosexual sexual harassment.  Even so, a growing body of case law from other jurisdictions supports the view that Title VII does allow relief for same-sex heterosexual sexual harassment.  The First, Second, Seventh, Eighth, and Ninth Circuits have indicated, either explicitly or in dicta, that a claim of same-sex heterosexual sexual harassment may lie under Title VII.  A number of district courts also have held that such claims are actionable.

### 1.   Same-sex sexual harassment found not actionable

In *Martin v. Norfolk Southern Railway Company*, 926 F. Supp. 1044 (N.D. Ala. 1996), the court held that harassment is outside the scope of Title VII's protection when the harasser and victim are heterosexuals of the same sex.  A male plaintiff alleged that his male co-employees: offered to expose their penises to him; asked plaintiff to show them his penis; grabbed and swatted

Appendix Page 4

plaintiff's genitals; told plaintiff that they would like to bend him over a chair and have sex with him; tried to kiss plaintiff; and, bent plaintiff over and attempted to insert a broom handle into plaintiff's anus (plaintiff was fully clothed). In granting defendant's motion for summary judgment, the court wrote:

> In a situation where a male sexually harasses a female, there is the presumption that he does so because she is a female and that he would not do the same to a male. The same is true when a homosexual or bisexual male harasses another male, there is the presumption that the harasser does so because he is sexually attracted to the male victim and would not treat a female in the same manner.    The presumption arises from the sexually oriented harassing conduct and is predicated upon the perceived need for sexual gratification. Because of the demand by the harasser for sexual gratification, the victim is singled out because of his or her gender.
>
> . . . .
>
> However, in the case of same-sex heterosexual hostile working environment sexual harassment, the presumption of sexual gratification and thus, sex discrimination, ceases to exist.    ...   [W]ithout the presumption of sexual gratification, there is no evidence that the harasser intentionally singled out the victim for offensive treatment because he was a male.    Thus, there is no sex discrimination.

*Martin*, 926 F. Supp. at 1049 (citation omitted).    The court concluded that "actionable hostile environment sexual harassment requires discrimination -- harassment because of the employee's sex."  *Martin*, 926 F. Supp. at 1049 (citing *Meritor*, 477 U.S. at 62, 106 S.Ct. at 2403; *Henson*, 682 F.2d at 903-04).  "To simply make all harassment with sexual overtones actionable without the existence of discrimination would be to read the word

discrimination out of the statute." *Martin*, 926 F. Supp. at 1050.

Other courts have held that same-sex heterosexual sexual harassment is not actionable under Title VII, because the conduct is not "based on sex." The Fourth Circuit addressed that issue in *McWilliams v. Fairfax County Board of Supervisors*, 72 F.3d 1191 (4th Cir. 1996), *cert. denied*, __ U.S. __, 117 S.Ct. 72, 136 L.Ed.2d 32 (1996). There, an emotionally and cognitively challenged male plaintiff was subjected to offensive conduct and taunting from male co-workers. The conduct involved co-workers tying the plaintiff's hands together, blindfolding him, forcing him to his knees, and placing a finger in the plaintiff's mouth to simulate an oral sexual act. *McWilliams*, 72 F.3d at 1193. On a separate occasion, a co-worker placed a broomstick to plaintiff's anus, while another exposed himself to plaintiff. *McWilliams*, 72 F.3d at 1193. The court noted that plaintiff made no claim that any of his harassers was homosexual. In concluding that a hostile environment sexual harassment claim does not lie where both the heterosexual harasser and the victim are of the same sex, the court wrote, "we do not believe that in common understanding the kind of shameful heterosexual-male-on-heterosexual-male conduct alleged here (nor comparable female-on-female conduct) is considered to be because of the [target's] 'sex.'" *McWilliams*, 72 F.3d at 1195-96. In support of its holding, the court wrote:

> The difficulty of construing this causation language to reach such same-sex claims and common sense of not doing

Appendix Page 6

so are emphasized when the practical implications are considered. That sort of conduct is utterly despicable by whomever experienced; that it may well rise to levels that adversely affect the victim's work performance; and that no employer knowingly should tolerate it are all undeniable propositions. But to interpret Title VII to reach that conduct when only heterosexual males are involved as harasser and victim would be to extend this vital statute's protections beyond intentional discrimination "because of" the offended worker's "sex" to unmanageable broad protection of the sensibilities of workers simply "in matters of sex." We cannot believe that Congress in adopting this critical causation language and the Supreme Court in interpreting it to reach discrimination by the creation of hostile workplace environments could have intended to reach such situations. There perhaps "ought to be a law against" such puerile and repulsive workplace behavior even when it involves only heterosexual workers of the same sex, in order to protect the victims against its indignities and debilitations, but we conclude that Title VII is not that law.

*McWilliams*, 943 F. Supp. at 1196; *see also Mayo v. Kiwest Corporation*, 94 F.3d 641 (4th Cir. 1996)(plaintiff's claim suffers from the "fatal infirmity" that the harasser and victim are indisputably males and neither is averred to be homosexual or bisexual); *Gibson v. Tanks Incorporated*, 930 F. Supp. 1107 (M.D.N.C. 1996)(same). Significantly, however, the court noted that its holding was not intended to reach same-sex discrimination where either victim or oppressor, or both, are homosexual or bisexual. *McWilliams*, 72 F.3d 1191, at n.4.

Appendix Page 7

## 2. Same-sex heterosexual harassment found actionable

On the other hand, several circuit courts have indicated that heterosexual same-sex discrimination is actionable under Title VII. In *Quick v. Donaldson Company, Inc.,* 90 F.3d 1372, (8th Cir. 1996), the Eighth Circuit allowed a male heterosexual plaintiff to proceed with his hostile work environment sexual harassment claim after he was subjected to verbal harassment and approximately 100 incidents of "bagging" (the intentional grabbing and squeezing of another man's testicles) by male co-workers. *Quick,* 90 F.3d at 1375. The district court dismissed plaintiff's claims because he could not demonstrate that he worked in an "anti-male" environment, or that "the bagging actions were sexual in nature." *Quick,* 90 F.3d. at 1376. The Eighth Circuit reversed, holding that the district court erred in requiring plaintiff to show evidence of an anti-male or predominantly female work environment. The court noted, "[p]rotection under Title VII is not limited to only disadvantaged or vulnerable groups. It extends to all employees and prohibits disparate treatment of an individual, man or woman, based on that person's sex." *Quick,* 90 F.3d at 1378 (citing *Harris,* 510 U.S. at 21, 114 S.Ct. at 370; *Meritor,* 477 U.S. at 67, 106 S.Ct. at 2405).

The Seventh Circuit indicated that same-gender claims should not be excluded from Title VII's purview in *Baskerville v. Culligan International Company,* 50 F.3d 428 (7th Cir. 1995). In examining the question of same-sex sexual harassment, Judge Richard Posner,

writing for the Seventh Circuit, noted parenthetically:

> Sexual harassment of women by men is the most common kind, but we do not mean to exclude the possibility that sexual harassment of men by women, or men by other men, or women by other women, would not also be actionable in appropriate cases.

*Baskerville*, 50 F.3d at 430 (emphasis added).

Similarly, in *Salpaugh v. Monroe Community Hospital*, 4 F.3d 134, 148 (2d Cir. 1993)(Van Graafeiland, J., concurring), *cert. denied*, 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994), Judge Van Graafeiland, in a concurring opinion, indicated that "harassment is harassment regardless of whether it is caused by a member of the same or opposite sex." *See also Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994), *cert denied*, __ U.S. __, 115 S.Ct. 733, 130 L.Ed.2d 636 (1995)("[w]e do not rule out the possibility that both men and women ... have viable claims against [a male supervisor] for sexual harassment"); *Morgan v. Massachusetts General Hospital*, 901 F.2d 186 (1st Cir. 1990)(there is a cause of action under Title VII for same-sex sexual harassment, but the conduct alleged was not sufficiently severe or pervasive to be actionable).

Several district courts have held that Title VII prohibits same-sex heterosexual harassment, if that harassment is based on gender. In *Vandeventer v. Wabash National Corporation*, 887 F. Supp. 1178, 1181 (N.D. Ind. 1995), the court withdrew its previous ruling that same-sex harassment is not actionable under Title VII.

The court stated that, although Title VII did not protect the specific plaintiff from the harassment alleged therein, "a man can state a claim under Title VII for sexual harassment by another man ... if he is being harassed because he is a man; the relative genders are irrelevant." *Vandeventer*, 887 F. Supp. at 1181; *see also Johnson v. Hondo, Inc.*, 940 F. Supp. 1403 (E.D. Wis. 1996)(same-sex harassment claims are cognizable under Title VII only if the harassment is because of the employee's gender and not some other reason outside the protections afforded by Title VII); *Ward v. Ridley School District*, 940 F. Supp. 810 (E.D. Penn. 1996)(same-sex sexual harassment is actionable under Title VII if the harassment was because of sex); *Griffith v. Keystone Steel and Wire*, 887 F. Supp. 1133 (C.D. Ill. 1995)(same-sex sexual harassment is prohibited by Title VII if plaintiff establishes he was sexually harassed "because of his sex"); *Sardinia v. Dellwood Foods, Inc.*, 1995 WL 640502 (S.D.N.Y. Nov. 1, 1995)(same-sex discrimination claims are actionable under Title VII where harassment is because of sex); *Blozis v. Mike Raisor Ford, Inc.*, 896 F. Supp. 805 (N.D. Ind. 1995)(a man can state a claim under Title VII for sexual harassment by another man only if he is being harassed because he is a man).

## C.  Heterosexual Harassing Homosexual

Generally, claims of same-sex sexual harassment of homosexuals by heterosexuals have failed, because Title VII does not prohibit discrimination on the basis of sexual preference. *See Ulane v. Eastern Airlines, Inc.,* 742 F.2d 1081, 1084 (7th Cir. 1984), *cert. denied,* 471 U.S. 1017, 105 S.Ct. 2023, 85 L.Ed.2d 304 (1985).  In *Holloway v. Arthur Andersen & Co.,* 566 F.2d 659 (9th Cir. 1977), a plaintiff claimed that her heterosexual employer violated Title VII by discriminating against her because she was undergoing a sex transformation.    Plaintiff argued that "transsexuality" was encompassed within the word "sex" in the language of Title VII. The Ninth Circuit rejected that claim.

> The cases interpreting Title VII sex discrimination provisions agree that they were intended to place women on an equal footing with men.  Giving the statute its plain meaning, this court concludes that Congress had only the traditional notions of "sex" in mind. ... Later legislative activity makes this narrow definition even more evident.  Several bills have been introduced to Amend the Civil Rights Act to prohibit discrimination against "sexual preference."  None have been enacted into law.

*Holloway,* 566 F.2d at 662-663 (citations omitted)(footnotes omitted).  The court reasoned that, because Congress demonstrated an intent to restrict the term "sex" to its traditional meaning, it would not "expand Title VII's application in the absence of Congressional mandate."  *Holloway,* 566 F.2d at 662-663.

The Ninth Circuit again addressed this issue in *DeSantis v. Pacific Telephone and Telegraph Co., Inc.,* 608 F.2d 327 (9th Cir.

1979). *DeSantis* involved male, openly homosexual plaintiffs alleging that they were continually harassed by heterosexual co-workers and forced to resign after a supervisor discovered that they were homosexual. The Ninth Circuit referred to its prior discussion in *Holloway* when holding that "Title VII's prohibition of 'sex' discrimination applies only to discrimination on the basis of gender and should not be judicially extended to include sexual preference such as homosexuality." *DeSantis*, 608 F.2d at 329-30 (citing *Smith v. Liberty Mutual Insurance Co,* 569 F.2d 325 (5th Cir. 1978); *Holloway,* 566 F.2d at 662-63; *Voyles v. Ralph K. Davies Medical Center,* 403 F. Supp. 456, 456-57 (N.D. Cal. 1975), *aff'd without published opinion,* 570 F.2d 354 (9th Cir. 1978)); *see also Williamson v. A.G. Edwards and Sons, Inc.,* 876 F.2d 69 (8th Cir. 1989).

Although it is well settled that Title VII does not prohibit discrimination on the basis of sexual orientation, homosexuals are not without relief under that statute. In *Vandeventer v. Wabash National Corporation,* 887 F. Supp. 1178 (N.D. Ind. 1995), the court indicated that Title VII's protection of homosexuals is contingent on whether the alleged discrimination was based on sex. "People who are harassed because they are homosexual (or are perceived as homosexual) are not protected by Title VII any more than are people who are harassed for having brown eyes." *Vandeventer,* 887 F. Supp. at 1180. The court commented that it is imperative to note that

Appendix Page 12

P.35

being homosexual does not deprive someone of protection from sexual harassment under Title VII, it is merely irrelevant to it. *Vandeventer*, 887 F. Supp. at 1180. "The issue is and remains whether one is discriminated against because of one's gender." *Vandeventer*, 887 F. Supp. at 1180.

### D.   Homosexual Harassing Heterosexual

#### 1.   Cases within the Eleventh Circuit

The Eleventh Circuit has not yet confronted the question of whether Title VII covers a homosexual harassing a heterosexual of the same sex; district courts within the circuit have addressed the issue, but reached varying conclusions. Initially, in *Joyner v. AAA Cooper Transportation*, 597 F. Supp. 537 (M.D. Ala. 1983), *aff'd without published opinion*, 749 F.2d 732 (11th Cir. 1984), a male employee successfully established a prima facie case of *quid pro quo* sexual harassment based on unwelcome homosexual advances by his manager. Those advances consisted of the manager inviting the plaintiff to his automobile and, while inside, placing his hands on the plaintiff's genitals and asking plaintiff to engage in homosexual activities. Judge Truman Hobbs wrote: "While the decisions holding that unwelcome sexual harassment violates [Title VII] have dealt with harassment in the heterosexual context, unwelcomed homosexual harassment also states a violation of Title VII." *Joyner*, 597 F. Supp. at 541 (footnote omitted).

Those district courts within the Eleventh Circuit following

Appendix Page 13

*Joyner* and recognizing a claim under Title VII for unwelcome homosexual harassment have done so where the harassing conduct was "based on sex." In *Prescott v. Independent Life and Accident Insurance Co.*, 878 F. Supp. 1545 (M.D. Ala. 1995), for example, a male plaintiff was subjected to unwanted homosexual advances by his supervisor in the form of unwelcome touchings and threats to plaintiff's employment status. Although the complaint was based on *quid pro quo* sexual harassment, the court's analysis is applicable to hostile work environment claims.

> The language of Title VII is clear. Congress chose to use the unmodified word "sex" when referring to the discrimination that is forbidden. This is a choice of an obviously gender neutral term. ... It seems clear to the court that had Congress intended to prevent only heterosexual sexual harassment, it could have used the term "member of the opposite sex." This way Congress would have accounted for both male-female harassment and the much less frequent female-male harassment.
>
> Therefore, Congress prohibited discrimination based on sex. This means that if a person receives discriminatory treatment from a company or a supervisor because of the employee's sex, Title VII has been violated. When a homosexual man propositions or harasses a male subordinate, but does not similarly proposition or harass female workers, the male employee has been singled out because of his gender. But for his being male, the harassment would not have occurred.

*Prescott*, 878 F. Supp. at 1550-1551 (citations omitted)(footnote omitted).

The issue was specifically addressed in a hostile work environment context in *McCoy v. Johnson Controls World Services, Inc.*, 878 F. Supp. 229 (S.D. Ga. 1995). *McCoy* involved a female

Appendix Page 14

co-employee allegedly attacking the female plaintiff, rubbing the plaintiff between her legs, and forcing her tongue into the plaintiff's mouth. Judge Anthony Aliamo "follow[ed] *Joyner* in holding that homosexual harassment can violate Title VII." *McCoy*, 878 F. Supp. at 232. Judge Aliamo reasoned:

> In 1986, the Supreme Court interpreted [Title VII] to prohibit sexual harassment in the workplace. ... According to the Supreme Court, "a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive working environment." ... The Court also noted that "unwelcome sexual advances that create an offensive or hostile working environment violate Title VII" ... "The gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.'" ... To be sure, sexual advances can be "unwelcome" regardless of the harasser's gender.

*McCoy*, 878 F. Supp. at 232 (citations omitted). Judge Aliamo concluded that, while the Supreme Court did not directly address homosexual harassment in *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), nothing in the Court's reasoning suggested that Title VII is limited to heterosexual harassment. *McCoy*, 878 F. Supp. at 232.

On the other hand, one court within the Eleventh Circuit held that Title VII does not prohibit same-sex homosexual on heterosexual harassment where the harassment is based on sexual preference or sexual orientation. In *Fredette v. BVP Management Associates*, 905 F. Supp. 1034 (M.D. Fla. 1995), the male plaintiff was subjected to homosexual advances by his supervisor. Although the supervisor was attracted to the plaintiff because of his

Appendix Page 15

gender, discriminatory actions and threats arose only after the
plaintiff refused his homosexual supervisor's advances and
innuendo. The court held that the harassment

> stemmed not from the fact that [plaintiff] was a man, but
> rather from the fact that [plaintiff] refused the
> manager's propositions and did not share the same sexual
> orientation or preferences as the manager. Title VII
> does not provide a cause of action for discrimination or
> harassment levied because of one's sexual orientation or
> preference.

*Fredette*, 905 F. Supp. at 1037 (citing *Garcia*, 28 F.3d at 451-52;
*Ulane*, 742 F.2d at 1082; *Henson*, 682 F.2d at 901, 904 (finding that
Title VII protects against discrimination based on one's "gender"
or "the fact of [one's] sex")).

In *Marciano v. Kash N' Karry Foodstores, Inc.*, 1996 WL 420879
(M.D. Fla. July 1, 1996), the court held that sexual orientation
was an irrelevant issue in hostile work environment claims. The
alleged harassment consisted of a homosexual night supervisor
telling a heterosexual plaintiff that he had a "cute butt" and
exposing himself to the plaintiff while saying, "[s]uck it, Mark,
you know you want it." Plaintiff argued that the fact he held a
different sexual preference than his supervisor did not preclude
him from being subjected to sexual harassment on the basis of his
sex. The court agreed, holding that "it is irrelevant in the
Title VII analysis which sexual preference [defendant] holds."
*Marciano*, 1996 WL 420879 *3 (citing *Joyner v. AAA Cooper
Transportation*, 597 F. Supp. 537, 541, *aff'd mem.* 749 F.2d 732

(11th Cir. 1984); *Fredette v. BVP Management Association*, 905 F.

Supp at 1038; *Garcia v. Elf Atochem North Am.*, 28 F.3d 446, 451-452

(5th Cir. 1994); *Henson v. City of Dundee*, 682 F.2d at 901, 904).

In denying the defendant's motion for summary judgment, the court

wrote:

> The fundamental policy of Title VII is to create an equal
> employment work place where employees are not
> discriminated or harassed solely because of their gender.
> Sexual preference and sexual orientation are incidental
> occurrences which the Court finds irrelevant to hostile
> work environment cases.

*Marciano*, 1996 WL 420879 *3.

### 2.   Cases outside the Eleventh Circuit

#### a.   Sexual orientation

Sexual orientation has been a factor applied by courts outside

the Eleventh Circuit in evaluating homosexual harassment of

heterosexuals. In *Miller v. Vesta, Inc.*, 946 F. Supp. 697 (E.D.

Wis. 1996), the court found Title VII did not apply to a lesbian

employee who sexually harassed her married heterosexual co-worker.

Initially, the court noted that "[t]he weight of well-reasoned

authority suggests that hostile environment same-sex harassment is

actionable under Title VII." *Miller*, 946 F. Supp. at 703

(citations omitted). In addressing the question of homosexual on

heterosexual harassment, the court wrote:

> To hold that homosexual harassment of heterosexuals
> automatically creates a hostile environment in violation
> of Title VII would grant protection based upon a
> plaintiff's sexual orientation. However,
> heterosexuality, as a sexual orientation, is simply not

Appendix Page 17

a protected characteristic under Title VII.

. . . .

> As Title VII does not protect employees based upon their
> sexual orientation, so it seems plaintiffs should not be
> able to rely on the relative sexual orientations of the
> harasser and victim to argue that there was a hostile
> environment.  Considering sexual orientation in assessing
> whether there was a hostile environment would effectively
> introduce sexual orientation-based protections into Title
> VII.

*Miller*, 946 F. Supp. at 712; *see also Shermer v. Illinois
Department of Transportation*, 937 F. Supp. 781 (C.D. Ill.
1996)(Title VII claim fails where plaintiff was harassed not
because of gender but because of sexual orientation).

### b.   Harassment based on sex

In determining whether homosexual harassment of a heterosexual
is actionable, the Fourth Circuit, as well as several district
courts, have based their holdings on an interpretation of the EEOC
regulations and the traditional question of "was the harassment
based on sex."  The Fourth Circuit addressed the issue of same-sex
sexual harassment in *McWilliams v. Fairfax County Board of
Supervisors*, 72 F.3d 1191 (4th Cir. 1996), and held that a hostile
work environment sexual harassment claim is not cognizable under
Title VII where both the perpetrator and victim of the harassment
are heterosexuals of the same sex.  However, the court left open
the question of whether Title VII prohibits same-sex harassment
where the perpetrator of the harassment is homosexual.  *McWilliams*,
72 F.3d at 1195 n.4.

Later that same year, in *Wrightson v. Pizza Hut of America,
Inc.*, 99 F.3d 138 (4th Cir. 1996), the Fourth Circuit wrote that "a
claim under Title VII for same-sex 'hostile work environment'
harassment may lie where the perpetrator of the sexual harassment
is homosexual." *Wrightson*, 99 F.3d at 141. In *Wrightson*, a
sixteen year old heterosexual male waiter was subjected to graphic
descriptions of homosexual acts in an effort by his superior to
pressure him into homosexual sex. In holding that same-sex sexual
harassment is actionable under Title VII, the Fourth Circuit first
explained that Title VII places no gender limitation on the
perpetrator or the target of the harassment. The court then looked
to the interpretation of Title VII provided by the EEOC compliance
manual, which states:

> The victim does not have to be of the opposite sex from
> the harasser.... [T]he crucial inquiry is whether the
> harasser treats a member or members of one sex
> differently from members of the other sex....   EEOC
> Compliance Manual (CCH) § 615.2(b)(3)(1987).
>
> Indeed, the EEOC addresses the very circumstances before
> us, concluding, as we do, that a claim under Title VII
> may lie:
>
>> Example 1--If a male supervisor of male and
>> female employees makes unwelcome sexual
>> advances toward a male employee because the
>> employee is male but does not make similar
>> advances toward female employees, then the
>> male supervisor's conduct may constitute
>> sexual harassment since the disparate
>> treatment is based on the male employee's sex.
>
> *Id.*, at § 615.2(b)(3).

*Wrightson*, 99 F.3d at 143; *see also Tietgen v. Brown's Westminster*

Appendix Page 19

*Motors, Inc.*, 921 F. Supp. 1495 (E.D. Va. 1996)(hostile work environment claim is actionable under Title VII where the harassment occurred because of the victim's gender); *Eklund v. Fuisz Technology, Ltd.*, 905 F. Supp. 335 (E.D. Va. 1995)(evaluating the EEOC's interpretation of the language of Title VII and considering the weight of authority on each side, the court concluded that same-sex discrimination may be actionable under Title VII); *Gibson v. Tanks Incorporated*, 930 F. Supp 1107 (M.D.N.C. 1996)(where neither of the parties to the harassment are homosexual, the harassment is not "based on sex").

The District of Columbia Circuit also acknowledged the viability of same-sex homosexual sexual harassment claims where the harassment is based on sex. Initially, in *Barnes v. Costle*, 561 F.2d 983, 992 n.55 (D.C. Cir. 1977), the court indicated that Title VII would encompass *quid pro quo* harassment

> imposed on a male subordinate by a heterosexual female superior, or upon a subordinate of either gender by a homosexual superior of the same gender. In each instance, the legal problem would be identical to that confronting us now -- the exaction of a condition which, but for his or her sex, the employee would not have faced.

Then, in *Bundy v. Jackson*, 641 F.2d 934, 942 (D.C. Cir. 1981), the court explicitly relied on *Barnes* as authority for its holding that, "discrimination is sex discrimination whenever sex is for no legitimate reason a substantial factor in the discrimination." In that decision, the court reaffirmed that sex discrimination could

Appendix Page 20

take the form of a homosexual supervisor harassing an employee of the same gender. *Bundy,* 641 F.2d at 942 n.7 (citing *Barnes v. Costle,* 51 F.2d 983 (D.C. Cir. 1977)); *see also Raney v. District of Columbia,* 892 F. Supp. 283 (D.C. Cir. 1995)(same); *Williams v. District of Columbia,* 916 F. Supp. 1 (D.D.C. 1996)(homosexual harassing same-sex heterosexual creates a cause of action under Title VII where harassment is on the basis of sex).

The case of *Equal Employment Opportunity Commission v. Walden Book,* 885 F. Supp. 1100 (M.D. Tenn. 1995), involved a male employee alleging he was harassed by his immediate supervisor, who was a homosexual male. That court noted:

> When a homosexual supervisor is making offensive sexual advances to a subordinate of the same sex, and not doing so to employees of the opposite sex, it absolutely is a situation where, but for the subordinate's sex, he would not be subjected to that treatment. Thus, this Court finds that same-sex sexual harassment is actionable under Title VII.

*Walden Book Co.,* 885 F. Supp. at 1104; *see also Wright v. Methodist Youth Services, Inc.,* 511 F. Supp. 307 (N.D. Ill. 1981)(cause of action under Title VII where, "but for" subordinate's sex, he would not be subjected to harassment); *Marrero-Rivera v. Department of Justice,* 800 F. Supp. 1024 (D.P.R. 1992), *aff'd,* 36 F.3d 1089 (1st Cir. 1994)(same).

A same-sex homosexual on heterosexual hostile work environment claim was found actionable in *King v. M.R. Brown, Inc.,* 911 F. Supp. 161 (E.D. Pa. 1995). *King* involved a female waitress who was

Appendix Page 21

"subjected to unwelcome sexual overtures and harassment by ... a female co-worker." *King*, 911 F. Supp. at 163. The co-worker, a lesbian, "engag[ed] in acts of 'undesired and nonconsensual physical touching as well as verbal abuse and intimidation'." *King*, 911 F. Supp. at 163. Judge Newcomer, recognizing that "[t]he courts that have ruled on the actionability of same gender harassment have reached divergent results," analyzed the competing lines of cases and concluded that the weight of authority supported the actionability of such claims. *King*, 911 F. Supp. at 167.

In *Waag v. Thomas Pontiac, Buick, GMC, Inc.*, 930 F. Supp. 393 (D. Minn. 1996), the court addressed the issue of whether a plaintiff may establish a violation of Title VII by proving that an allegedly homosexual supervisor harassed a heterosexual subordinate of the same gender by creating a hostile work environment. In concluding that Title VII protects employees against same-gender sexual harassment, the court first noted that, even though the statutory text does not expressly provide for same gender sexual harassment claims, the language does not foreclose the possibility of such claims. *Waag*, 930 F. Supp. at 400. "The [Supreme] Court has interpreted the Act broadly to protect both men and women employees." *Waag*, 930 F. Supp. at 400 (citing *Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 682, 103 S.Ct. 2622, 2630, 77 L.Ed.2d 89 (1983)). In that regard, the court wrote:

In view of the Supreme Court's willingness to protect men from unfair employment practices in *Newport News,* the notion that Congress enacted Title VII only to protect against abuses resulting from "an imbalance of power" is untenable.

*Waag,* 930 F. Supp. at 400; *see also Walden Book Co.,* 885 F. Supp. at 1103 (it would be untenable to allow reverse discrimination cases but not same sex sexual harassment cases to proceed under Title VII). The court also relied on the language of the EEOC compliance manual, § 615.2(b)(3), in reaching its conclusion.

A Nevada district court addressed the argument that acceptance of same-sex sexual harassment claims under Title VII requires the recognition of homosexuality as a protected category under Title VII. *Tanner v. Prima Donna Resorts, Inc.,* 919 F. Supp 351 (D. Nev. 1996). The court rejected this argument, stating that homosexuals are just as protected by Title VII's existing protections as anyone else. *Tanner,* 919 F. Supp. at 355 (citing *Vandeventer,* 887 F. Supp. 1178). The court wrote that, to categorize same gender sexual harassment as "homosexual" harassment makes the unwarranted assumption that sexual harassment is motivated by sexual attraction on the part of the harasser. *Tanner,* 919 F. Supp. at 355; *but see, Martin v. Norfolk Southern Railway Company,* 926 F. Supp. 1044, 1049, (without the presumption of sexual attraction there can be no sex discrimination). "Title VII does not require that sexual harassment be motivated by attraction, only that it be 'because of sex'; indeed, harassment, like other forms of victimization, is

Appendix Page 23

often motivated by issues of power and control on the part of the harasser, issues not necessarily related to sexual preference." *Tanner*, 919 F. Supp. at 355. The court concluded that sexual preference should be a non-issue and the focus should be on whether the harassing conduct was "because of sex." *Tanner*, 919 F. Supp. at 355.

**E.    Bisexual Harassing Heterosexual**

The applicability of Title VII to cases where a heterosexual is sexually harassed by a bisexual has been addressed by two courts. In *McCoy v. Johnson Controls World Services, Inc.*, 878 F. Supp. 229 (S.D. Ga. 1995), the court held that same-sex homosexual sexual harassment violated Title VII. However, the court went a step further and noted that Title VII does not apply to bisexuals who harass both men and women. *McCoy*, 878 F. Supp. at 232. Sexual harassment must be based on sex, and when a bisexual supervisor harasses both men and women alike, "'the sexual harassment would not be based upon sex because men and women are accorded like treatment.'" *McCoy*, 878 F. Supp. at 232 (quoting *Henson*, 682 F.2d at 903).

A district court within the District of Columbia also addressed the issue of same-sex harassment by a bisexual harasser. In *Ryczek v. Guest Services, Inc.*, 877 F. Supp. 754 (D.D.C. 1995), a homosexual female supervisor was accused of sexually harassing a heterosexual female subordinate.    Judge Thomas F. Hogan cited

*Barnes,* 561 F.2d 983, and *Bundy*, 641 F.2d 934, in concluding that "this Circuit does not interpret Title VII to preclude all cases involving sexual harassment in which a supervisor harasses a member of the same gender." *Ryczek*, 877 F. Supp. at 761. The court went on to explain that the District of Columbia Circuit does not recognize a Title VII cause of action for sexual harassment when the supervisor is bisexual. *Ryczek*, 877 F. Supp. at 761. The court noted that, "[a]ssuming that the language in *Barnes* and *Bundy* is the law of the Circuit, any defendant could avoid Title VII liability for sexual harassment by claiming to be a bisexual or by harassing members of both sexes." *Ryczek*, 877 F. Supp. at 762. After raising this interesting problem, the court rested its holding on other grounds.

## F.    Homosexual Harassing Homosexual

In *Roe v. K-Mart Corporation*, 1995 WL 316783 (D.S.C. March 28, 1995), a male homosexual alleged that he was discharged because he refused his supervisor's homosexual advances. In deciding the question of whether those facts support a claim under Title VII the court noted:

> [T]he United States Supreme Court has held that unwelcomed sexual advances which create "an offensive or hostile working environment" may form the basis of a claim of sex discrimination under Title VII. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. § 7, at 64 (1986). The Supreme Court did not restrict its holding to sexual advances from a member of the opposite sex as the victim.

*Roe*, 1995 WL 316783, at *1. Further, the court reasoned that if a

Appendix Page 25

plaintiff is subjected to unwanted homosexual advances, the offending conduct is "based on the employer's sexual preference and necessarily involved the plaintiff's gender for an employee of the non-preferred gender would not inspire the same treatment." *Roe,* 1995 WL 316783, at *2 (citing *Joyner v. AAA Cooper Transportation,* 597 F. Supp. 537, 541 (M.D. Ala. 1983), *aff'd without opinion,* 749 F.2d 732 (11th Cir. 1984); *Wright v. Methodist Youth Services, Inc.,* 511 F. Supp. 307, 309-10 (N.D. Ill. 1981)).

A similar issue was raised in *Johnson v. Community Nursing Services,* 932 F. Supp 269 (D. Utah 1996), where plaintiff was involved in a "relationship [that] was lesbian in nature." Plaintiff's supervisor was openly lesbian. When plaintiff refused her supervisor's attempts to initiate a sexual relationship, she alleges the work environment became hostile. In concluding that an employee subjected to sexual harassment should not be denied Title VII protection merely because his or her harasser is of the same gender, the court reasoned:

> Title VII should not be interpreted to condone sexual harassment by a homosexual or lesbian supervisor of a member of the same sex, or to exclude a homosexual or lesbian employee who is the victim of harassment by a same-sex employer. Same-sex sexual harassment, based on gender, should not be treated differently than the more common male versus female sexual harassment. Accordingly, this court holds that a cause of action exists under Title VII for victims of same-sex sexual harassment.

*Johnson,* 932 F. Supp. 272.

The issue of whether same-sex homosexual harassment is

Appendix Page 26

cognizable under Title VII was most recently addressed in *Swage v. Inn Philadelphia and Creative Remodeling, Inc.*, 1996 WL 368316 (E.D. Pa. June 21, 1996). There, the plaintiff[1] alleged that he was subjected to unwelcome sexual advances by his supervisor, an admitted homosexual. The harassment involved the supervisor: demanding that plaintiff perform construction and remodeling services in his underwear; fondling and rubbing plaintiff; demanding that plaintiff have sex with him; asking for a date with plaintiff; and, asking to perform oral sex on plaintiff. Defendant moved to dismiss the complaint on the grounds that plaintiff was complaining about harassment because of his homosexuality rather than his sex. The court held that,

> [i]f proved at trial, this may conceivably be relevant to whether plaintiff ultimately prevails, but the court will not find on a motion to dismiss that plaintiff, where sexual orientation has not been established, will be unable to demonstrate that he was subject to ... hostile environment harassment by a homosexual male supervisor 'because of' plaintiff's sex.

*Swage*, 1996 WL 368316 *4.

---

[1]Although evidence was submitted to establish that plaintiff was a homosexual and plaintiff did not deny the allegation, at that stage of the proceeding, plaintiff's sexual orientation had not been established.

Appendix Page 27